UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Eleven 10 LLC, | ) | Case No. 1:18-cv-2318 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | |
| Zhongshan Mai Bu Mould Co., Ltd. | ) | Jury Trial Demanded |
| | ) | |
| and | ) | |
| | ) | |
| DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint

For its complaint against defendants Zhongshan Mai Bu Mould Co., Ltd. and DOES 1-5 (collectively, "FMA"), plaintiff Eleven 10 LLC ("Eleven 10") states:

## Summary of Case

1.      Eleven 10 was founded by a former Recon Marine who is now a current SWAT Medic, who created and marketed unique tourniquet carrying cases (the "Eleven 10 Tourniquet Cases").

2.      The Eleven 10 Tourniquet Cases took off, surpassed expectations, and became highly sought after, especially among first responders, law enforcement and members of the military.

3.      However, with success comes imitation. Chinese companies have been selling inferior knockoffs of the Eleven 10 Tourniquet Cases at much lower prices that copy and infringe the Eleven 10 trade dress in a blatant attempt to capitalize on Eleven 10's successful product design and its recognition in the marketplace.

4.  Eleven 10 now sues to stop the knockoffs to protect its customers and to protects its sales, reputation, and goodwill against FMA's wrongful acts, including trade dress infringement.

**The Parties**

5.  Eleven 10 is an Ohio limited liability company with a principal place of business in Westlake, Ohio.

6.  Upon information and belief, Zhongshan Mai Bu Mould Co., Ltd. ("Zhongshan") is a company located at First Floor, 16 Shuguang Road, Tanzhou Town, Zhongshan City, 528467 Guangdong, People's Republic of China. Zhongshan operates under a number of unregistered, fictitious company names, including: FMA Outdoor Professional LTD; FMA Professional Airsoft  LTD; FMA Lead Web Services, Inc.; and TBAirsoft.  FMA does business worldwide, including the state of Ohio, via the websites www.fmahk.com,  www.fmahk.net,  www.ebay.com,  https://shopping.yahoo.com, www.aliexpress.com, and https://www.mil-freaks.com, among others.

7.  Each Doe 1-5 is a person who at all times relevant hereto was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of Zhongshan and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and  all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including but not limited to full knowledge of each and every violation of Eleven 10's rights  and the damages to Eleven 10 proximately caused thereby. The Does and Zhongshan are referred to collectively herein as "FMA."

**Jurisdiction and Venue**

8.  This Court has subject matter jurisdiction over Eleven 10's Lanham Act claims under 15 U.S.C. § 1121 and under 28 U.S.C. § 1331 because they arise under federal law.

9.  This Court has supplemental subject matter jurisdiction over Eleven 10's state law claims under 28 U.S.C. § 1367 because those claims are so related to the Lanham Act claims that together the claims are part of the same case or controversy under Article III.

10.  This Court has personal jurisdiction over FMA because, among other things, it is confusing and harming Ohio residents, doing business in Ohio, offering to sell goods in Ohio to Ohio individuals and businesses, actually contracting with Ohio residents and shipping goods into Ohio, receiving payments from Ohio residents, and intentionally causing tortious harm in Ohio to Eleven 10.

11.  Venue is proper under 28 U.S.C. § 1391 because FMA is subject to personal jurisdiction in this district under Ohio law and, therefore, "resides" in the Northern District of Ohio according to federal law.

**Relevant Facts**

**I.  Eleven 10's Trade Dress**

12.  Eleven 10 is a Westlake, Ohio based manufacturer of high-quality self-aid/buddy-aid gear.

13.  Eleven 10 markets, distributes, and sells famous self-aid/buddy-aid products that are easy to use with minimal training, including its Eleven 10 Tourniquet Cases.

14.  The Eleven 10 Tourniquet Cases employ a distinctive trade dress. (*See infra* at ¶ 27.) The look and feel of the Eleven 10 Tourniquet Case Products, as comprised by the

design of the case and by the arrangement, size, and style of the ornamental features on the case, is referred to here collectively as the "Eleven 10 Trade Dress."

15.     Some of the features that distinguish the Eleven 10 Trade Dress include (but are not limited to):

> a.     A raised square on the middle to upper half of the front side of the case, with an embossed cross featured on the raised square.

> b.     A generally rectangular body with stylized angled lower corners, and, on newer models, a top recessed notch in the center of the front side of the case.

> c.     Ornamental raised sections featuring functional holes on the back side of the case.

16.     Since 2010, Eleven 10 has generated significant revenue from the sale of its Eleven 10 Tourniquet Cases that incorporate the Eleven 10 Trade Dress.

17.     Since 2010, Eleven 10 has significantly invested in marketing, advertising, and promoting its Eleven 10 Tourniquet Cases with the Eleven 10 Trade Dress in the relevant channels of trade throughout the United States and internationally.

18.     As a result of the sales, marketing and distinctiveness of the product itself, the trade dress has acquired secondary meaning.

19.     Eleven 10 has the exclusive right to use the Eleven 10 Trade Dress in connection with tourniquet cases by virtue of its development, creation, and use of that trade dress and the timing thereof.

20.     Since 2010, Eleven 10 has promoted its Eleven 10 Tourniquet Cases on its website at *1110gear.com* and elsewhere.

21.     Eleven 10 sells its Eleven 10 Tourniquet Cases throughout the United States

and internationally.

22.     Through its website, advertising, other promotional efforts, and sales, Eleven 10 has enhanced the reputation of the Eleven 10 brand, and it has caused the Eleven 10 Trade Dress to grow in strength, value, and recognition to the point that the product trade dress now carries strong secondary meaning.

23.     Eleven 10's distributors, retailers, and end users have come to associate the distinctive Eleven 10 Trade Dress with Eleven 10.

24.     The Eleven 10 Trade Dress, taken as a whole, is not functional because it does not enhance, or otherwise affect, the quality or performance of the Eleven 10 Tourniquet Cases.

## II.     **FMA Copies the Eleven 10 Trade Dress**

25.     FMA is advertising and selling tourniquet case products ("Infringing Products") that are nearly identical in appearance to the Eleven 10 Tourniquet Cases.

26.     Aware of Eleven 10's success, FMA copied the Eleven 10 Trade Dress on its tourniquet case products by mimicking the raised square featuring an embossed cross patch on the front side of the tourniquet case, by incorporating raised sections beneath the holes on the back of the case, by featuring angled lower corners of the case and by using a cut-out in the center top portion of the front side as do Eleven 10 Tourniquet Case Products. (*See infra* at ¶ 27.)

27.     Specifically, FMA has introduced a tourniquet case product with the same size, shape, color scheme and general overall design of the Eleven 10 tourniquet cases. A side-by-side comparison is below:

Eleven 10 Tourniquet Case | FMA Tourniquet Case













 

 

28.    Upon information and belief, FMA markets, distributes, and sells its Infringing Products throughout the United States, including in Ohio, as well as internationally.

29.    FMA has intentionally copied the Eleven 10 Trade Dress with the bad intent of trading on the goodwill and reputation of the Eleven 10 Tourniquet Cases.

30.    By copying the Eleven 10 Trade Dress, FMA is likely to cause confusion, or cause mistake, or deceive as to the affiliation, connection, or association between FMA and Eleven 10 as to the origin, sponsorship, or approval of FMA's or Eleven 10's goods, services, or commercial activities.

31.    Upon information and belief, FMA used the Eleven 10 Trade Dress with the specific intent of confusing the marketplace, trading on FMA's goodwill, and diverting business from Eleven 10 to FMA. Thus, FMA's infringing conduct is willful infringement

of FMA's trademark rights.

## Count One
*Trademark Infringement under the Lanham Act*
(15 U.S.C. § 1125)

32.     Eleven 10 incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

33.     The Eleven 10 Trade Dress is valid and legally enforceable.

34.     Eleven 10 owns the Eleven 10 Trade Dress.

35.     The Eleven 10 Trade Dress is inherently distinct.

36.     Through years of commercial use, the Eleven 10 Trade Dress also has acquired distinctiveness in the marketplace, such that those in the relevant channels of distribution readily associate the Eleven 10 Trade Dress with Eleven 10 and its self-aid/buddy-aid gear, including tourniquet cases.

37.     By using the Eleven 10 Trade Dress to market and sell tourniquet cases, FMA caused, and are likely to continue to cause, confusion in the minds of purchasers between Eleven 10, FMA, and their respective goods and services.

38.     Eleven 10 has no control over the quality of FMA's goods that are promoted, advertised and sold under the Eleven 10 Trade Dress, with the result that Eleven 10's valuable goodwill in its Eleven 10 Trade Dress will be damaged. The sale of inferior quality counterfeit tourniquet cases further pose a risk of serious harm to users who may be deceived into believing that they have a genuine Eleven 10 tourniquet case when they do not. It is unknown if FMA's counterfeit products are capable of successfully protecting a potentially life-saving tourniquet.

39.     FMA has willfully infringed Eleven 10's trademark rights under the Lanham Act.

40.     By reason of the foregoing, Eleven 10 is being irreparably harmed by FMA's willful activities and will continue to be damaged unless FMA is enjoined from the aforesaid acts.

**Count Two**
*Violations of the Ohio Deceptive Trade Practices Act*
(Ohio Revised Code § 4165.01 *et seq.*)

41.     Eleven 10 incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

42.     FMA's unlawful activities, as described above, violate Ohio's Deceptive Trade Practices Act.

43.     FMA's willful violations of Ohio's Deceptive Trade Practices Act have damaged Eleven 10 and have caused it irreparable harm, which will continue unless FMA's unlawful conduct is enjoined by this Court.

**Count Three**
*Unfair Competition*

44.     Eleven 10 incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

45.     FMA's willful and unlawful activities, as described above, are unfair competition under Ohio common law.

46.     FMA's unfair competition has damaged Eleven 10 and caused it irreparable harm, which will continue unless FMA's unlawful conduct is enjoined by

this Court.

### Count Four
*Unjust Enrichment*

47.     Eleven 10 incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

48.     Through its unlawful activities, as described above, FMA has obtained benefits, including business and goodwill, which rightfully belong to Eleven 10.

49.     FMA has not compensated Eleven 10 for the benefits that it wrongfully obtained, despite justice and equity requiring them to do so.

50.     FMA have unjustly enriched itself by obtaining and retaining the ill-gotten benefits of its unlawful activities.

51.     FMA's receipt and retention of the benefits of its unlawful activities is unjust enrichment.

52.      FMA's unjust enrichment has damaged Eleven 10 and caused it irreparable harm, which will continue unless FMA's unlawful conduct is enjoined by this Court.

### PRAYER FOR RELIEF

**WHEREFORE**, Eleven 10 prays for judgment against defendants as follows:

(A)     Compensatory damages, including profits, and actual damages, in an amount to be determined at trial.

(B)     An accounting and disgorgement of all ill-gotten profits.

(C)     Treble and punitive damages.

(D)     Attorneys' fees.

(E)     Pre-judgment and post-judgment interest.

(F)     Costs of the action.

(G)     Preliminary and permanent injunctive relief, barring FMA, DOES 1-5, and others from:

> (1) Manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any goods in association with a trade dress, a trademark mark, or other matter that is a colorable imitation of, or that bears a confusing similarity to, the Eleven 10 Trade Dress;
>
> (2) Otherwise infringing Eleven 10's trademark or trade dress rights;
>
> (3) Otherwise engaging in any deceptive trade practice; or
>
> (4) Otherwise unfairly competing with Eleven 10.

(H)     An order than FMA and all those assisting or acting in concert with FMA, recall from all distribution channels and all retail locations all products that are confusingly similar to the Eleven 10 Trade Dress.

(I)     An order that FMA, and all those assisting or acting in concert with FMA, deliver up for destruction all labels, signs, prints, packages, labels, advertisements, products and any other matter bearing matter that is confusingly similar to the Eleven 10 Trade Dress.

(J)     Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

Dated: October 4, 2018

_s/ Matthew J. Cavanagh_____
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Counsel for Eleven 10 LLC*

## **Jury Demand**

Eleven 10 hereby demands a jury trial for all issues so triable.

  s/ Matthew J. Cavanagh
*Counsel for Eleven 10 LLC*