UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Eleven 10 LLC, | Case No. 1:18-cv-2318-JG |
| Plaintiff, | |
| | Judge James S. Gwin |
| vs. | |
| Zhongshan Mai Bu Mould Co., Ltd. et al. | |
| Defendants. | |

## Affidavit of Matthew J. Cavanagh

I, Matthew J. Cavanagh, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called as a witness, could and would competently testify to them.

2. I am a member at the Cleveland, Ohio, law offices of McDonald Hopkins LLC ("McDonald Hopkins").

3. I am licensed to practice law in the state of Ohio, before the United States District Court for the Northern District of Ohio, before various other federal courts, and before the United States Patent and Trademark Office.

4. I am one of the attorneys representing plaintiff Eleven 10 LLC in this case.

### Efforts to serve defendant under the Hague Convention

5. The defendant in this case is Zhongshan Mai Bu Mould Co., Ltd., which does business as FMA, ("FMA"). FMA is a Chinese company that counterfeits Eleven 10's products and imports them into the U.S., where they are sold and resold on websites such as Amazon, eBay, and AliBaba.

6. After Eleven 10 filed this lawsuit, Eleven 10 engaged a professional translator to translate the complaint and summons into Chinese, as required by the Hague Convention for service on a Chinese company.

7. The only way to serve a Chinese company under the Hague Convention is to submit a request to the Chinese Central Authority. According to the information provided to the Hague Convention by China, the Chinese Central Authority is the International Legal Cooperation Center (ILCC), Ministry of Justice of China (the "MOJ").

8. On October 30, 2018, I sent the translated copy of the summons and complaint, completed forms, and all other required paperwork to the MOJ. A true copy of the cover letter sent to the MOJ is attached as Exhibit A. I have not included all of the enclosures because they are voluminous. Those enclosures can and will be provided upon the Court's request.

9. On April 24, 2019, I emailed the MOJ to request a status update, a true copy of which is attached as Exhibit B.

10. On April 24, 2019, the MOJ responded to my email by stating that the case was received and registered and would be "transferred to our Supreme Court for the further process." A true copy of the MOJ response is attached as Exhibit C.

11. On March 26, 2020, I emailed the MOJ again to request a status update. A true copy of my email is attached as Exhibit D.

12. The MOJ responded with an auto-reply that stated: "Due to the COVID-19 outbreak, our office will not be able to fully operate until April." A true copy of the MOJ's response is attached as Exhibit E.

13. On March 31, 2020, Eleven 10's counsel sent a letter with copies of the complaint and summons in English and Chinese to FMA at its address in Guangdong, China. A true copy of that letter is attached as Exhibit F.

14. Due to new Chinese regulations, however, Federal Express was not permitted to deliver the package without a name and phone number at the destination.

15. Eleven 10 is unable to obtain a name and phone number for FMA because it does not provide any of that information on its website or in any publicly-available resource.

16. Thus, Federal Express refused to deliver the package due to FMA concealing the names and contact information for people that work at or operate the company in China.

17. In an effort to perfect service or expedite service on FMA, I have communicated with two different lawyers in China that practice law in China and who are familiar with service of Chinese companies under the Hague Convention. Both advised that there is no way to cause MOJ to move any quicker or to compel it to perfect service, and U.S. companies are essentially at the mercy of the MOJ.

18. I have also spoken to two separate firms that specialize in serving Chinese companies with process in U.S. federal lawsuits. Both gave the same advice as the Chinese lawyers: there is nothing Eleven 10 can do to prompt MOJ to act or move quicker.

19. To date, the MOJ has not provided any certificate that service has been completed, the MOJ has not provided any assurances that service will occur soon, and

Eleven 10 and its counsel have made every reasonable effort to obtain service in compliance with the Hague Convention.

**Attorneys' fees incurred**

20. In 2005, I obtained my law degree from Case Western Reserve University Law School in Cleveland, Ohio, and have practiced law continuously since then.

21. I have experience representing clients in a variety of civil litigation matters, and I specialize in intellectual property litigation.

22. I am billing Eleven 10 an average of $450 per in this matter to represent it in this action.

23. My current billing rate is reasonable and competitive among attorneys in the field of intellectual property litigation in Cleveland, Ohio with my level of experience.

24. As evidence that my firm's billing rates and legal fees are reasonable for this geographic area and the subject matter of this case, I have reviewed the *American Intellectual Property Law Association (AIPLA) 2019 Report of the Economic Survey* (the "AIPLA Report"). A true copy of cited excerpts from the AIPLA Report is attached as Exhibit G.

25. The AIPLA Report is an economic survey developed and managed by the Law Practice Management Committee of the American Intellectual Property Law Association (AIPLA) that collects, analyzes and reports billing rate and typical charges for certain intellectual property legal services. U.S. Courts of Appeals and U.S. District Courts have relied upon the AIPLA Economic Surveys to gauge the reasonableness of attorneys' fees sought in intellectual property litigation. *See, e.g., View Eng'g, Inc. v. Robotic Vision Sys.,*

*Inc.*, 208 F.3d 981, 987-88 (Fed. Cir. 2000) (approving lodestar calculation by district court that used AIPLA survey); *Mathis v. Spears*, 857 F.2d 749, 755-256 (Fed. Cir. 1988) (district court's conclusion that billing rates "generally corresponded to those presented in the [AIPLA] surveys and were [thus] reasonable in view of those surveys" was, "as the law makes clear," appropriate).

26. I am an intellectual property litigator, registered patent attorney, and member at McDonald Hopkins and have been practicing law since 2005. The average hourly billing rate in 2018 for a private firm partner in Other Central (which encompasses Ohio) ranges from $342 (25th percentile) to $500 (75th percentile). (AIPLA Report, at p. I-29.) The average hourly billing rate in 2018 for a private firm partner with 10-14 years of experience is $346 (25th percentile) to $500 (75th percentile). My billing rate falls within both ranges and is therefore reasonable.

27. Emily Vlasek is the associate that assisted me with this matter on behalf of Eleven 10. Ms. Vlasek is a 2012 graduate of the Ohio State University Moritz College of Law. Ms. Vlasek billed her time on this matter as a rate of $315 per hour. The average hourly billing rate in 2018 for a private firm associate on partner-track in Other Central (which encompasses Ohio) ranges from $251-$345/hr. (25-75% percentiles). (AIPLA Report, at p. I-42.) The average hourly billing rate in 2018 for a private firm associate on partner-track with 5-6 years of experience is $284-$458/hr (25-75% percentiles). (*Id.*) Ms. Vlasek's billing rate falls within these ranges and is therefore reasonable.

28. Ms. Vlasek and I performed a number of tasks in this lawsuit, including:

- Investigate trade dress infringement by FMA and determine best legal methods for obtaining relief against same;

- Research service methods under the Hague Convention to serve Chinese company and complete paperwork necessary to request service from China Central Authority;

- Draft status reports to the Court, perform legal research regarding expediting service by Chinese government, confer with foreign service experts and lawyers regarding possibility of expediting service;

- Perform legal research regarding obtaining default judgment under Article 15 of the Hague Convention;

- Review and analyze law to support motion for default judgment; draft and revise motion for default judgment, memorandum in support, proposed order, affidavit, and other supporting documents.

29. The fees charged by Ms. Vlasek and me break down as follows:

| Attorney | Billing Rate | No. of hours | Total |
|---|---|---|---|
| M. Cavanagh | $ 450 / hr. | 21 | 9450 |
| E. Vlasek | $ 315 / hr. | 6.6 | $2,079 |
| TOTAL | $418 / hr. (AVG) | 27.6 | $11,529 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2020.

_____
Matthew J. Cavanagh